The Honorable Kim Hendren State Senator 1501 Hwy. 72 Southeast Gravette, AR 72736-9438
Dear Senator Hendren:
I am writing in response to your request for an opinion on behalf of a constituent on a question concerning the Arkansas Freedom of Information Act ("FOIA," A.C.A. §§ 25-19-101 — 109 (Repl. 2002 and Supp. 2007). Specifically, your constituent is seeking to determine whether the Bella Vista Property Owners' Association ("POA") is subject to the FOIA by virtue of its receipt of "assessments" — also referred to as a "monthly fee" — and "water fees" from members, as well as certain funds from the recently incorporated City of Bella Vista. In this regard, your constituent reports:
 We pay a monthly fee to the POA for usage of the amenities, whether we use them or not. This is required. The POA plans to contract with the City to provide some services, as well as leasing some buildings to the City. Those funds from the City will be coming from state turnback funds and franchise fees, as well as the taxes the City will need to add. The POA also kept the water utility, which I think should be public money from us for the water. . . .
Regarding the water utility, he states that "[t]he POA . . . is selling water to all City property and residents."
His specific question is "whether these monies are considered public money?" *Page 2 
RESPONSE
The test for applicability of the FOIA to private entities, as it has been articulated by the Arkansas Supreme Court, requires as a threshold matter some payment of government money to the private entity. In my opinion, assessments or fees paid by members of a private property owners' association — such as the Bella Vista POA — to the association, do not meet this test. A contract between the POA and the City of Bella Vista that is funded by government moneys, such as turnback funds or taxes, might render the POA subject to the FOIA, at least to the extent of the contract, depending upon the substance of the particular agreement. If, for instance, as your constituent might be suggesting, the POA is being paid directly by the City to provide water service to the City, then in my opinion such payment likely triggers the FOIA, at least to the extent of any contract or agreement for the provision of such service. I have not been provided with any detailed facts in this regard, however. In addition, I lack sufficient information to speculate regarding any other possible contract between the POA and the City.
As your constituent appears to recognize, private, nongovernmental entities can be subject to the FOIA if they are in receipt of "public funds."[1] This follows from FOIA's definition of "public meetings" ("meetings of . . . organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds,") and "public records" (records kept by "any other agency wholly or partially supported by public funds or expending public funds.") A.C.A. § 25-19-103(4) and (5)(A) (Supp. 2007). The determination of whether a private entity is subject to the FOIA requires a two-step analysis — first, whether the private entity is wholly or partially supported by public funds or expending public funds and second, whether the activities of the private entity are of public concern and sufficiently "intertwined" with the activities of government. See,e.g., Op. Att'y Gen. 2006-086, citing City of Fayetteville v.Edmark, 304 Ark. 179, 801 S.W.2d 275 (1990) and J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (m m Press, 4th ed. 2004), at 50-51 (footnotes omitted).
Both of these requirements are pertinent for purposes of your constituent's inquiry regarding the Bella Vista POA. With regard to the threshold "public funding" *Page 3 
requirement, the Arkansas Supreme Court has held that this applies to "government moneys." Sebastian County Chapter of American Red Cross v.Weatherford, 311 Ark. 656, 661, 846 S.W.2d 641 (1993). The court inWeatherford looked to a dictionary definition of "public funds" as "[m]oneys belonging to government, or any department of it, in hands of [a] public official." 311 Ark. at 659 (quoting Black's LawDictionary (6th ed. 1990)). The court stated that it was giving the term "public funds" its "plain and ordinary meaning which is best evidenced by Black's Law dictionary and the definition `moneys belonging to the government.'" Id. at 661.
The test for applicability of the FOIA to private entities, as it has been articulated by the Arkansas Supreme Court, therefore requires as a threshold matter some payment of government money to the private entity. With regard to funds flowing to the private POA in question, your constituent has referred to "assessments to members" and a "monthly fee," as well as "water fees." I assume that these terms have reference to obligations that are imposed on members of the POA for the use of common properties, facilities, and services. See, e.g., Hutchens, v.Bella Vista Village Property Owners' Association, 82 Ark. App. 28, 31,110 S.W.3d 325 (2003) (setting out the covenants between the developer of Bella Vista Village and lot owners with respect to assessments and charges, and observing that "[i]n accordance with the terms of the Bella Vista Declaration, . . . [e]very Bella Vista property owner is a member of the POA, and their property is subject to the declaration.") These assessments and fees are levied pursuant to private contract. See Kellv. Bella Vista Village Property Owners' Ass'n, 258 Ark. 757, 761,528 S.W.2d 651 (1975) (noting that such assessments "arise out of contract and . . . constitute a benefit to the property owner.") Most significant for purposes of the issue at hand, they are not levied by an entity that has any public or governmental status, see n. 1, supra. Consequently, they are not "moneys belonging to government," Weatherford, supra, and they do not constitute "public funds" as contemplated by the FOIA.
I note that your constituent has also mentioned that some moneys are being paid by the City to the POA. He refers to "turnback funds," "impact fees," "franchise fees," and possibly taxes. These moneys belonging to the City are clearly "public funds," and thus, if paid to the POA, satisfy the first part of the test identified above. It must be recognized, however, that the mere receipt of public funds in itself will not suffice to bring a private organization within the reach of the FOIA. In addition, one must inquire whether the private entity carries on "public *Page 4 
business" or is otherwise intertwined with the activities of government.City of Fayetteville v. Edmark, 304 Ark. 179, 801 S.W.2d 275 (1990) (private attorneys retained by city). See also Ops. Att'y Gen. 2000-039
(private non-profit corporation licensed by the Department of Human Services to provide services for the developmentally disabled), 95-273 (private non-profit agency on aging designated to provide services to older Arkansans under a federal grant program) and 90-243 (non-profit organizations that receive grants from cities or counties under A.C.A. §§ 14-173-101 to-105 to promote economic development). The court inEdmark, supra, in considering whether the files of private attorneys retained by a city were public records, determined that the FOIA should apply when the government "seeks to conduct its affairs through private entities," since in that situation "it seems clear that those entities are for all practical purposes the government itself." 304 Ark. at 187, quoting J. Watkins, Access to Public Records Under the Arkansas Freedomof Information Act, 37 Ark. L. Rev. 741, 764 (1984).
Although it is unclear just how "intertwined" a private entity must be with the government before the FOIA will be deemed applicable, it bears noting, given your constituent's statement that the POA is selling water to the City, that the Arkansas Court of Appeals has identified "water service" as "a service routinely provided by government." Waterworks v.Kristen Investment Properties, 72 Ark. App. 37, 42, 32 S.W.3d 60 (2000).Waterworks involved a FOIA request for certain records of a private nonprofit volunteer fire department that provided water service to persons within the Beaverfork Fire Protection District. The Beaverfork District was created by the Faulkner County Quorum Court pursuant to state law. Id. See also A.C.A. §§ 14-284-101 et seq. (authorizing the formation of fire protection districts in counties). The District assessed so-called "user fees" against property in the District,72 Ark. App. at 42; and the revenue from these fees went to the private fire department, which had an exclusive contract to provide water service to customers in the District. Id. The private entity claimed that it only received "indirect" public funding by virtue of government loans. However, the court found the moneys received under the contractual arrangement clearly sufficient to meet the public funding portion of the FOIA test. Specifically, the court noted that ". . . the funding for operating the [private volunteer fire department's] Water Division comes from a public source in the form of a levy against property owned within the District." Id. (emphasis added).
Waterworks thus supports the general proposition that the FOIA applies to a privately-owned water system that serves the public purpose of providing water *Page 5 
service under a publicly funded contract. In this regard, I note that your constituent has stated that the POA is "selling water to all City property and residents." It is not clear from this statement whether water is being sold by the POA to the City. If there is an agreement between the POA and the City, under which government, i.e., public moneys are paid by the City to the POA for water service, then it seems clear based on Waterworks, supra, that the FOIA is applicable.
However, it should be noted that a question may nevertheless remain regarding the precise degree to which the FOIA applies in that instance. I assume, given the apparent fact that POA members are assessed for water service by the POA, that any agreement between the City and the POA for water service would be limited in scope. For instance, I can speculate that the POA might be contracting with the City to provide water service for City-owned property. It is important to recognize in this regard that a private organization that receives only partial support from government is only partially bound by FOIA requirements. That is, the FOIA will apply "only to records and meetings `relevant to the task' for which a . . . nonprofit corporation receives [government funds]." Op. Att'y Gen. 94-023, quoting J. Watkins, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 2d ed. 1994) at 41, citingEdmark, supra. The issue of which meetings and documents of a private organization are subject to the FOIA is one that must be resolved case-by-case, according to the surrounding facts and the particular records or meetings in question. See Op. 94-023, supra. Assuming, however, that the POA enjoys only partial financial support from public funds, it may be concluded that other unrelated records or meetings are not covered by the FOIA.
I lack sufficient information to speculate further regarding any other possible factual scenarios respecting the POA that might trigger the FOIA. However, some final mention should be made of A.C.A. §25-19-105(b)(18) (Supp. 2007), a provision of the FOIA which exempts from inspection and copying "[r]ecords . . . containing information relating to security for any public water system[,]" the term "public water system" being defined under subsection 25-19-103(6) (Supp. 2007), as "all facilities composing a system for the collection, treatment, and delivery of drinking water to the general public. . . ." Given the breadth of this definition, and the reported fact that the POA provides water to all City residents, it seems that subsection 25-19-105(b)(18) likely applies in the event the POA is subject to the FOIA to any degree. Please note, however, that this provision only exempts "security"-related records. *Page 6 
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] As this office has previously opined, the FOIA ordinarily does not apply to a property owners' association which is composed of private owners in a geographic area organized to direct policy for that area.See Op. Att'y Gen. 85-29. Such an association generally has no public or governmental status. *Page 1